

ENTERED
02/17/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| MICHAEL WALTER FAUSER; aka MWF § | CASE NO: 10-31501 | |
| INVESTORS, *et al* § | | |
|     Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| MICHAEL WALTER FAUSER § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-3018 | |
| § | | |
| GREEN TREE SERVICING, LLC § | | |
|     Defendant(s) § | | |

## MEMORANDUM OPINION

Michael Fauser filed this suit against Green Tree[1] for violations of the Court's discharge injunction. A trial was held on June 8, 2015 to determine the extent of the violations and the amount of damages to be awarded. An additional hearing took place on October 26, 2015 to determine the amount of attorney's fees to be awarded.

The Court awards Fauser actual damages of $1,905.00 and $65,512.69 in attorney's fees. Additionally, Fauser is awarded $4,500.00 in punitive damages. Future violations of Fauser's discharge injunction by Green Tree will be subject to sanction.

### Procedural Background

The Court has addressed the facts underlying this dispute at length in two previous rulings on dispositive motions. (ECF No. 23, 50). In a Memorandum Opinion issued on February 26, 2015 in response to competing motions for summary judgment, the Court found that Green Tree violated the discharge injunction ordered in Fauser's chapter 7 case. (ECF No.

---

[1] After the inception of this lawsuit, Green Tree Servicing, Inc. merged with Ditech Financial LLC. (ECF No. 74). For the purposes of this Memorandum Opinion, all references to Green Tree are equally applicable to Ditech, including all monetary awards for which Green Tree is liable.

50). On June 8, 2015, the Court held a trial to determine two issues of material fact left open after the resolution of the motions for summary judgment. First, whether Green Tree's violation of the discharge injunction was sufficiently willful so as to support an award of damages. Second, assuming willfulness is found, determining the amount of damages that should be awarded. After trial, the Court made an oral finding of Green Tree's willful violation of the discharge injunction. At that time, the Court took the issue of damages under advisement and encouraged the parties to make efforts to stipulate to the reasonable amount of attorney's fees owed to Fauser's lawyer, Mr. Probus. After the parties failed to reach an agreement the Court held a trial on October 26, 2015 to hear evidence on the issue of attorney's fees.

The Court has previously granted Green Tree's motion for partial summary judgment with respect to Fauser's claim for damages to his credit and business reputation. The only claims for damages that remain are for actual damages, including attorney's fees, and punitive damages.

**Factual Background**

Fauser received a discharge in his chapter 7 case on June 9, 2010. (Case No. 10-31501 ECF No. 58). On July 28, 2011, Steve Smith, Chapter 7 Trustee, filed a notice of intent to abandon property, including a property located at 7534 Cypress Edge Dr. Cypress, TX 77433. (Case No. 10-31501 ECF No. 67). On December 10, 2013 Green Tree sent a letter to Fauser demanding he pay $33,174.10 to cure the default on the loan concerning the Cypress Edge property. (ECF No. 48-2). The alleged default occurred as a result of the failure to make monthly payments for the preceding three years. (*Id.*). The Green Tree letter stated that (1) Fauser "may be held personally liable under state law, if any, for any deficiency balance not realized from the sale of the property," and (2) "If the default is not cured, Green Tree will report the defaulted loan to any appropriate credit reporting agency." (*Id.*). In its February 26, 2015,

Memorandum Opinion, the Court found that a disclaimer on Green Tree's letters stating, "Green Tree is not attempting to collect or recover the debt as your personal liability, but is only complying with statutory notice requirements" did not change the true nature of the communication as an attempt to collect on a discharged debt. (ECF No. 50 at 7).

### Jurisdiction

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334. This is a core proceeding under 28 U.S.C. § 157. 4 Collier on Bankruptcy ¶ 524.02[2][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("A proceeding to enforce the discharge injunction is a core proceeding under section 157(b)(2)(O) of title 28 . . . .").

### Analysis

A discharge in a case under the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). The discharge injunction must be enforced if it is to provide any meaningful protection to debtors. *Curtis v. LaSalle Nat'l Bank* (*In re Curtis*), 322 B.R. 470, 483 (Bankr. D. Mass. 2005). Though the injunction is statutory in nature, its effect is equivalent to that of a court order. *In re Sandburg Fin. Corp.*, 446 B.R. 793, 803 (S.D. Tex.) *aff'd sub nom. In re Am. Rice, Inc.*, 448 F. App'x 415 (5th Cir. 2011). Accordingly, the consequences for violating the discharge injunction are identical to the consequences attendant to violating a court order, namely, civil contempt. Collier at ¶ 524.02[2][c].

Section 524 does not specifically address awarding monetary relief for violations of the discharge injunction, but courts have fashioned such relief through their inherent contempt power and statutory authority under § 105. *In re Ritchey*, 512 B.R. 847, 860 (Bankr. S.D. Tex.

June 24, 2014).  For willful violations of the discharge injunction, courts have awarded actual damages, emotional distress damages, and attorney's fees.  In order to support finding a willful violation of § 524(a)(2), the offending creditor must "(1) know the injunction has been entered, and (2) intend[] the actions that violate it." *In re Contreras,* 2007 WL 273128, at *1 (Bankr. S.D. Tex. Jan. 26, 2007).  Punitive damages may also be awarded in certain situations.  Collier at ¶ 524.02[2][c].

## Damages

*Emotional Distress*

Fauser requested damages for mental anguish in his original complaint.  (ECF No. 2 at 8).  To recover damages for emotional distress a plaintiff must present *specific* evidence of emotional damage.  *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002).  A plaintiff may establish emotional damage through his own testimony, but it must be sufficiently "particularized and extensive" to meet the specificity threshold.  *Id.*  "Hurt feelings, anger and frustration are part of life, and are not the types of emotional harm that could support an award of damages." *Id.*  At the trial held on June 8, 2015, Fauser testified that Green Tree's collection efforts caused him frustration and consternation.  He explained that he believed the discharge that he received in 2010 was effective, and receipt of Green Tree's collection calls and letters made him feel like he had not resolved the issue with finality.  He testified that the collection efforts shocked him, and would bother him all day when Green Tree attempted to contact him.  He also testified that he was unsure about how the apparent debts would affect his credit.  (Testimony of Michael Fauser at trial held on June 8, 2015).  The Court finds Fauser to be a credible witness; however, his testimony tends toward generalized assertion, for which damages for emotional distress may not be awarded.

*Economic Harm*

A debtor who has suffered pecuniary losses as a result of a willful violation of discharge injunction may request an award of compensation for actual damages. These damages may include an award to remedy the economic harm. *In re McClure*, 420 B.R. 655, 663 (Bankr. N.D. Tex. 2009), *opinion modified on reconsideration*, 430 B.R. 358 (Bankr. N.D. Tex. 2010) (awarding actual damages for the time and effort debtor spent prosecuting their claims); *see In re Garcia*, 2013 WL 414177, *8 (Bankr. W.D. Tex. Feb. 1, 2013). Such an award is necessary to encourage parties to defend and vindicate orders of the court. *See In re Clayton*, 2010 WL 4482810 (Bankr. S.D. Tex. Oct. 29, 2010). While the harm suffered by Fauser does not rise to a level warranting emotional distress damages, Green Tree should be held accountable for the direct consequences of its contemptuous conduct.

Fauser must be compensated for the time and effort he expended prosecuting this claim. Based on the summary judgment record, Fauser spent a total of 38.1 hours of his time in depositions, trial, and consultation with his attorney in this matter. At the rate of $50.00 per hour, Fauser is awarded $1,905.00. (ECF No. 75-1 at 3-7).

*Attorney's Fees*

Fauser asks the Court to award a total of $65,512.69 in attorney's fees and expenses. Mr. Probus, Fauser's attorney, testified that he and his paralegal spent a total of 185.5 hours on this matter with hourly rates of $350.00 and $95.00, respectively. Mr. Probus requests $62,225.00 in fees and $3,287.69 in expenses, totaling $65,512.69. (ECF No. 75-1 at 3-10; 75-3 at 2-4).

The calculation of attorney's fees under federal law is well-established. Attorney's fees are awarded based on the lodestar method of computation. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). First, the court calculates the lodestar fee by multiplying the

reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Id.* Next, the court considers whether to make a lodestar adjustment upward or downwards depending on the circumstances of the case.[2] At a hearing held on October 26, 2015, Mr. Probus testified at length concerning the attorney's fees he accrued throughout the course of prosecuting this adversary proceeding. Upon review of Mr. Probus's records detailing the dates, amounts, and services provided as well as the hourly rates charged, the Court finds the attorney's fees and expenses are both reasonable and appropriate and will award the total amount sought.

Although the attorney's fees may be disproportionate to the economic damage, the record makes it apparent that Green Tree intended to continue its collection efforts without any regard to the discharge injunction. Green Tree left Fauser with a Hobson's choice: suffer the consequences of the discharge violations, or engage in litigation. A review of the records show that Mr. Probus performed his services appropriately under the *Johnson* factors. If the Court fails to allow debtors to vindicate the discharge injunction through the retention of counsel, discharge violations will not abate.

As one court has stated, denying damages for willful violations of the discharge injunction because no harm was caused, "is akin to arguing that torture that leaves no mark cannot be deemed torture at all." *In re McClure*, 430 B.R. 358, 364 (Bankr. N.D. Tex. 2010).

---

[2] The court should consider the following twelve factors when considering whether to make an adjustment: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

*Punitive Damages*

The Court recognizes the general tenet that "bankruptcy courts have the inherent power to punish parties for their contemptuous violation of the discharge injunction through the imposition of punitive damages." *In re* Chambers, 324 B.R. 326, 332 (Bankr. N.D. Ohio 2005). Though punitive damages are not explicitly authorized by the Code, they are justified under the assumption that Congress did not enact § 524 and then fail to give courts recourse to dissuade recalcitrant creditors from conduct violative of its clear prohibition. *Id.* However, courts generally exercise great restraint in awarding punitive damages.

Jurisdictions throughout the country have established varying standards for when an award of punitive damages for a violation of the discharge injunction is appropriate. Some courts have held that punitive damages may only be awarded if the violator acted with malevolent or malicious intent. *In re Ritchey*, 512 B.R. 847, 863 (Bankr. S.D. Tex. 2014); *Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834, 849 (Bankr. W.D. La. 1995); *Brandtley v. Sharon Weeks* (*In re Brantley*), 116 B.R. 443 (Bankr. D. Md. 1990) ("The request for punitive damages . . . will also be denied because, while his actions were deliberate, no malevolent intent has been shown . . . ."); *Matter of Arnold*, 206 B.R. 560, 568-69 (Bankr. N.D. Ala. 1997) (finding the discharge injunction violator's actions to be sufficiently willful *and malicious* to support an award of punitive damages) (emphasis added). Some courts have held that the violator must act in an egregious, intentional manner. *In re* Nibbelink, 403 B.R. 113 (Bankr. M.D. Fl. 2009). Other courts require the violator act with reckless disregard of a protected right. *In re* Wagner, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987); *In re Lile*, 103 B.R. 830 (Bankr. S.D. Tex. 1989). Others still have held that punitive damages are only appropriate when

the violator acts with arrogant defiance of federal law. *In re Mullarkey*, 81 B.R. 280, 284 (Bankr. D. N.J. 1987).

The Fifth Circuit has yet to definitively address the appropriate standard. In the context of automatic stay violations, the Fifth Circuit requires "egregious, intentional misconduct on the violator's part." *In re Repine*, 536 F.3d 512 (5th Cir. 2008). This heightened standard in automatic stay cases is instructive. In light of *Repine*, *Ritchey*, and the great weight of authority from other circuits, the Court concludes that a violation of the discharge injunction must be made with more than a willful disregard of a court order before punitive damages may be awarded.

Accordingly, the Court will apply the standard as stated in *Repine* to the present case. Punitive damages may be awarded to Fauser if Green Tree discharge violation constituted egregious, intentional misconduct.

At trial Fauser testified concerning the phone calls he received from Green Tree. Fauser stated that he never gave Green Tree permission to call him back. Fauser testified that on all occasions Green Tree called him, he told them (1) he had been discharged in bankruptcy, (2) he had abandoned his interest in the homes, and (3) to please not to call him back. The bankruptcy activity section of Green Tree's collections manual instructs collectors to note requests to stop calling in their records, and to follow certain "cease and desist" procedures. (ECF No. 48-7 at 27). Despite being placed on written and oral notice of the discharge injunction, Green Tree continued its collection efforts. Accordingly, punitive damages are awarded for the attempts to collect from Fauser after he requested not to be called and placed Green Tree on affirmative notice.

In addition to telephone calls, Fauser also received letters from Green Tree that violated the discharge injunction. In the February 26, 2015 Memorandum Opinion, the Court found that

the letter Green Tree sent to Fauser entitled "Notice of Default and Right to Cure Default" at ECF No. 48-2 violated the discharge injunction. Additionally, four letters sent between November 2013 and February 2014 entitled "Monthly Informational Statements" also violated the discharge injunction. (ECF No. 48-2 at 13, 16; 48-3 at 9, 12). Each letter included an envelope and a perforated portion declaring the amount due with instructions to "detach and return this portion with remittance." The letters, with the exception of ECF No. 48-3 at 9, contained a disclaimer. As mentioned previously, such a disclaimer does not change the nature of the communication as an act to collect on a discharged debt.

In nearly all respects, these letters resemble an invoice to collect on a debt owed. These correspondences constitute willful and egregious violations of the discharge injunction. Such violations are deserving of an award of punitive damages. $500.00 per violation is an appropriate award to Fauser to discourage Green Tree from taking these actions in the future. *In re Diaz*, 526 B.R. 685, 693 (Bankr. S.D. Tex. 2015) (awarding $500.00 for each non-abusive communication in violation of the discharge injunction).

Accordingly, Fauser is awarded $4,500.00 for Green Tree's willful and egregious conduct.

*Sanctions*

"Sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) (quoting *Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986)). Coercive sanctions are designed to compel future compliance with a court order are avoidable through compliance. Thus, they may be imposed in an ordinary civil proceeding upon notice and

an opportunity to be heard. *Id.* (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Bankruptcy courts have the power to coerce compliance with injunctive orders. A creditor who attempts to collect a discharged debt is in violation of the § 524 injunction. *In re Giles*, 502 B.R. 892 (Bankr. N.D. Ga. 2013). Coercive sanctions may be awarded as a sanction for civil contempt if a party willfully violates the discharge injunction. *In re Garcia*, 2013 WL 414177 (Bankr. W.D. Tex. Feb. 1, 2013).

Testimony at trial demonstrated that Green Tree has a systemic problem in which debtors continue to receive demand letters and telephone calls for debts validly and finally discharged in bankruptcy. It appears that despite actual knowledge of Fauser's discharge, Green Tree's processes for mailing demand letters and issuing telephone calls remained unchanged. The following is the testimony[3] of Garrett Quentin Dale, the Director of Collections for Green Tree:

> Q: . . . I think it has become apparent that there are certain things that Green Tree has done, whether systemically through letters or whether through an account representative making a phone call, that maybe it shouldn't have done on Fauser's accounts, right?
>
> A: I don't know that I agree with that.
>
> . . .
>
> Q: So you - - you wouldn't agree that the Green Tree representative should not have been calling Fauser after he said, "Please don't call me because I've been discharged in bankruptcy, I don't want this property, and don't call me back," that they shouldn't be calling back? You agree with that, don't you?
>
> A: I don't - - I don't see what the reason was for the phone calls.
>
> Q: Okay, but they were happening, right?
>
> A: Yes.
>
> . . .

---

[3] Mr. Dale's testimony was read into evidence from a deposition transcript at the trial on June 8, 2015. Mr. Probus took Mr. Dale's deposition on October 08, 2014.

> Q: . . . You would agree with me that a monthly billing statement telling Fauser that he owes $80,000.00 by some date, February 1st or something, of 2014, is not something that should have been sent to Fauser as someone who has received a Chapter 7 discharge on the debt, correct?
>
> A: I don't see why - - I don't know why we would send that to someone in that situation
>
> . . .
>
> Q: As director of collections, do you know what Green Tree could do to stop that from happening again, namely, sending a monthly billing statement to a person who has received a discharge in a bankruptcy, Chapter 7 bankruptcy?
>
> . . .
>
> A: If, in fact, that letter should not have been sent to them - - if, in fact that letter was not - - should not have been sent to them, I mean, we would have to figure out why it was sent and work from there.
>
> Q: But you don't know, as you sit here today, what an appropriate remedy or fix within Green Tree for that situation would be?
>
> A: No.

(Deposition testimony of Garrett Quentin Dale from introduced at trial on June 8, 2015).

Other courts have noted Green Tree's disregard of discharge injunctions. *See In re Mooney*, 340 B.R. 351 (Bankr. E.D. Tex. 2006) (assessing $40,000.00 in punitive damages against Green Tree for willful and malicious violations of the discharge injunction, noting that more might have been warranted if it had been provided evidence of Green Tree's repeated violations in other cases).

Accordingly, any *future* communication to Fauser from Green Tree that violates the discharge injunction will subject Green Tree to a $1,500.00 sanction per communication, plus attorney's fees.

## Conclusion

The Court will issue a judgment consistent with this Memorandum Opinion.

SIGNED **February 16, 2016.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE